UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>v.<br><br>TAKAR WATSON,<br><br>              Defendant. | Criminal Case 25-mj-3119 (KAR) |

MEMORANDUM AND ORDER DENYING THE GOVERNMENT'S
MOTION FOR PRETRIAL DETENTION

Defendant Takar Watson ("Watson") has been indicted in the District of Vermont in Counts One, Five, and Ten of a 12-count indictment with conspiring to distribute fentanyl, oxycodone, and cocaine base, with no amount specified (Count One); conspiring to employ persons under 18 to distribute fentanyl and cocaine base (Count Five); and conspiring to possess and use firearms in furtherance of drug trafficking activities (Count Ten) . The government moved for pre-trial detention, invoking the presumption that applies when there is probable cause to believe that the defendant committed a controlled substances offense for which a maximum term of imprisonment of ten years or more is prescribed by statute. *See* 18 U.S.C. § 3142(e)(3)(A). The court held a hearing on the government's motion on September 9, 2025, and, at the conclusion of the hearing, took the government's motion under advisement.

The factors to be considered in determining whether to release or detain a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include the nature and circumstances of the

1

offense charged; the weight of the evidence as to guilt; the history and characteristics of the accused, including family ties, history relating to drug or alcohol abuse, criminal history, record concerning appearances at court proceedings, financial resources and employment; and the nature and seriousness of the danger to any person or the community that would be posed by a release. *See* 18 U.S.C. § 3142(g).

In seeking pretrial detention, the government relies to a significant extent on the nature and circumstances of the alleged offenses, including that Watson involved minors in the distribution of illegal controlled substances using firearms in furtherance of the enterprise. The government argues that the drug distribution activity in which Defendant was allegedly engaged posed a very substantial danger to the community. The government further represents that it intercepted communications in which Watson was the originator of messages urging the deletion of messages and destruction of phones in June 2023 (Exh. 3 at 90-91) and was a recipient of messages sent around the same time addressing the attempted destruction of firearms (Exh. 2 at 6-8).

As to Watson's personal characteristics, according to the Pretrial Services Report ("PSR"), he is a forty-one-year-old man who was born in Springfield, Massachusetts whose mother lives in Pennsylvania, while his father lives in Springfield. His parents shared custody of him while he was growing up, and, when he was arrested, he had a Pennsylvania driver's license and was driving a car registered in Pennsylvania. He reported strong family ties with both parents and his five siblings. He has four children with three mothers. The children live locally with their respective mothers, and he supports them financially to the extent he is able to do so (PSR at 1-2). Defense counsel represented that Watson has a profitable business selling vintage clothing and was returning from the Brimfield Antique Flea Market when he was arrested. If

released pending trial, Watson proposes to live with his father at 8 Dewitt Street in Springfield in a house owned by his father.  The father's wife and son also live at the residence, and a daughter stays there occasionally.  Watson's father is a teacher in the public school system and has agreed to serve as a custodian on Watson's release pending trial.  Watson reported no history of mental illness or substance abuse except for the daily use of marijuana which he understands cannot continue if he is released pending trial.

      Watson's criminal history is not extensive.  He has 2017 convictions for domestic violence that resulted in a two-year sentence in the House of Correction with a five-year period of probation following release.  At the hearing, through counsel, Watson admitted that he absconded during this probationary period.  His attorney reported that Watson obtained counsel and surrendered some two years after he absconded and was sentenced to an additional two months of probation, which ended in September 2023 (PSR at 3).  He has charges for disorderly conduct and third-degree assault pending in Connecticut (PSR at 3).  Defense counsel informed the court that these charges arise from interactions with the same woman who was his victim in 2017.  He shares two children with this woman and currently provides support for their children and communicates about them using his father as the intermediary for such communications.  There appears to be no abuse prevention order entered in connection with the Connecticut charges.

      Watson does not dispute that the rebuttable presumption in the Bail Reform Act applies in this case.  A defendant's evidence to rebut the presumption of pretrial detention "can include 'lack of criminal history, community ties, steady employment, family support and Probation's supportive recommendation.'" *United States v. Grove*, Criminal Action No 23-10202-FDS-1, 2023 WL 6142438, at *2 (D. Mass. Sept. 20, 2023) (quoting *United States v. Cross*, 389 F. Supp.

3d 140, 142 (D. Mass. 2019)). The defendant's burden of production is not heavy. *See, e.g., United States v. Ayala-Vega*, CRIMINAL NO. 23-00114 (RAM), 2023 WL 3559694, at *2 (D.P.R. May 19, 2023). The burden of persuasion remains with the government. Even when a defendant submits rebuttal evidence, however, the presumption of pretrial detention retains evidentiary weight. *See, e.g., United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). The burden of proof on risk of flight is by a preponderance of the evidence. The burden of proof on danger to the community is by clear and convincing evidence. *See, e.g., United States v. Galeano*, Criminal No. 09-cr-03-02-JL, 2009 WL 129958, at *1 (D.N.H. Jan. 16, 2009) (citing *United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991)).

    Watson has rebutted the presumption of pretrial detention. His criminal history arises from a volatile personal relationship that has included physical violence. The court in no way condones such conduct, but it is unrelated to the alleged criminal conduct that brings him before this court. He has no prior convictions related to firearms or the illegal distribution of controlled substances. Notwithstanding his apparent lack of a recent residence in Springfield, he has significant family ties to the community, including a supportive father and young children living in the area. Although the Probation Department had not inspected the father's residence, as described, the residence is deemed suitable by Probation. Watson reports his self-employment to be profitable and he is willing to seek what the court might view as more conventional employment while on pretrial release. He has a well thought out supportive recommendation for pretrial release from the Probation Department. *See Grove*, 2023 WL 6142438, at *2. The court therefore turns to the question of whether the government has satisfied its burden of proof as to risk of flight and/or danger to the community.

    a.   Risk of flight.

The government has not shown by a preponderance of the evidence that Watson poses a risk of flight. The court acknowledges that Watson may face a lengthy prison sentence if he is convicted. Nonetheless, it is apparent from electronic messages Watson originated and viewed in June 2023 that he knew at that time that the federal government was investigating the illegal activities in which he is an alleged participant (Exhs. 2 & 3). Watson may have hoped to escape indictment, but there is no evidence before the court to show that he took steps to conceal himself from federal law enforcement between June 2023, when he appears to have learned of a federal investigation, and his September 2025 arrest. His family ties to this area are genuine. It is not surprising that he also has ties to Pennsylvania where his mother resides. The court does not find that such ties, reasonably attributable to his family history, give rise to an increased risk of flight or failure to appear, where Watson has identified a suitable custodian and residence in Springfield where pretrial supervision will take place. The government has not pointed to evidence that Watson has ties outside of the United States or connections to individuals with the resources and motivation to assist him in fleeing from the jurisdiction. It is undisputed that Watson absconded while on probation in January 2021 (PSR at 3). Nonetheless, so far as appears from the record, he appeared in court as required from the date of his arrest in August of 2017 through his conviction in November 2017 and surrendered to serve the incarcerative portion of his sentence. There are no indications of default in connection with the charges presently pending against him in Connecticut. Thus, the record shows that Watson has a history of appearing in court when required to do so. In these circumstances, the government has not shown by a preponderance of the evidence that Torres poses a risk of flight or nonappearance that cannot be addressed by stringent conditions of pretrial release, including GPS monitoring

and a curfew, that will reasonably assure his presence in the jurisdiction and in court when required.

      b.  Danger to the community

      1.  Nature and circumstances of the offense

The government persuasively contends that the nature and circumstances of the offense support pretrial detention. The government represents that Watson conspired to distribute fentanyl, oxycodone, and cocaine base in Vermont, through a drug trafficking organization ("DTO") that relied on minors to conduct its activities, and in which co-conspirators used guns in furtherance of those activities. The illegal distribution of controlled substances, particularly when committed in conjunction with the possession of firearms, presents great danger to the community in the form of the use of controlled substances by purchasers and the potential for violence, including deadly violence, when a defendant uses a firearm in furtherance of drug trafficking. This factor weighs in favor of detention.

      2.  Weight of the evidence

The government does not have evidence that Watson was directly involved in controlled buys or personally possessed a firearm, and it is not possible to determine the extent of his participation in the DTO's activities on the abbreviated record before the court. The grand jury found probable cause to indict him, and there are messages that at least appear to demonstrate Watson's knowledge of the DTO's activities. On the limited record presently available, "the Court holds this factor as neutral." *United States v. Torres*, 678 F. Supp. 3d 259, 263 (D. Mass. 2023).

      3.  The defendant's history and characteristics

Watson has no history of mental illness or substance use disorder. He has the support of family members, notably including his father, who is a schoolteacher. The PSR suggests that he has maintained relationships with, and provided some financial support for, his children (PSR at 1-2). He has arranged an appropriate means of communicating with the individual with whom he has had a volatile relationship that avoids any direct contact between himself and the mother of two of his children (PSR at 2). While his self-employment selling vintage clothing has not been verified by business records (and it may be difficult to do this), it would be unfair to penalize the kind of entrepreneurial undertakings that are increasingly providing income in this economy for that reason. His criminal history is not extensive, does not include any convictions related to the use of firearms or for the distribution of narcotics that have not been vacated, and shows no defaults. There is no indication in the PSR of gang involvement. He is willing to submit to home detention and monitoring of his location. This factor weighs to some degree in favor of release.

    4. Seriousness of danger

"Congress has made it clear that an 'especially significant' danger to the community is the risk that the drug network will continue to function while defendant awaits trial." *United States v. Arroyo-Reyes*, 32 F.3d 561, at *4 (1st Cir. 1994) (unpublished) (quoting *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985)). There is no evidence that the DTO with which Watson was allegedly involved continued to function beyond June 2023. Watson was not indicted until May 2025. There is no evidence before the court that Watson engaged in illegal activities – other than in connection with the volatile relationship he has had with the mother of two of his children – between June 2023 and May 2025, and no evidence he has the connections and ability to continue trafficking narcotics going forward. As to possible obstruction of justice,

7

there is also no evidence before that court that Watson has had any communications with anyone else allegedly involved in the DTO from June 2023 to the present. Acknowledging the presumption that someone in Watson's position poses a continuing danger to the community, the evidence before the court that Watson will continue to engage in trafficking in narcotics or obstruction of justice is thin. *Compare, e.g., United States v. Jones*, Criminal No.: 4:23-cr-40002, 2023 WL 4196803, at *2 (D. Mass. Apr. 10, 2023) (affirming the magistrate judge's decision to detain the defendant pending trial based on "the defendant's past criminal history of illegal drug distribution, continued involvement with the criminal justice system, failure to comply with conditions of release during a prior supervised probation" and his questionable honesty during his interview with the Probation Department). Overall, taking into account that this is a predictive inquiry, this factor slightly favors Watson.

    c.  Conditions of pretrial release

The court finds that there are conditions that will reasonably assure the safety of the community and his attendance in court if Watson is released pending trial, including (but not limited to) home detention with a stringent curfew, GPS monitoring, specifically recommended by the Probation Department so that Watson's location can be verified in real time, no communications with alleged co-conspirators except in the presence of counsel, or with any individual whom the government identifies as a potential witness, and full cooperation with supervision by the Probation Department. A form of conditions of release is attached hereto as exhibit 1.

                                            /s/ Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
Dated: September 11, 2025           United States Magistrate Judge